## Richmond.

### GILLIGAN v. COMMONWEALTH.

#### JANUARY 31, 1901.

1. CRIMINAL LAW — *Felonies—Jurisdiction of County Courts—Removal to Circuit Court.*—Under section 4016 of the Code, as amended, (Acts 1893-'4, p. 270) county courts have exclusive original jurisdiction of all felonies committed within their respective counties, and the prisoner has no right to elect to be tried in the Circuit Court. The act of March 3, 1892 (1891-'2, p. 973), required the right of removal, which then existed, to be exercised before a motion for a continuance, and did not confer the right of removal, and if it did the right was taken away by the later act.

2. CRIMINAL LAW—*Verdicts—What Record Must Show—Case at Bar.*—A verdict on an indictment for felony must be rendered by the jury in open court, in the presence of the prisoner, and be received and recorded by the court. These facts must appear from the record, and no presumption that all things were rightly done by the trial court will supply the omission of any one of these facts. They sufficiently appear, however, from a record which shows the presence of the prisoner, and declares that the jury " retired to their room to consult of their verdict, as follows, to wit: * * * Whereupon the prisoner, by his counsel, moved the court not to proceed to judgment upon the verdict aforesaid " but to set it aside as contrary to the law and the evidence.

3. CRIMINAL LAW—*Record of Proceedings—Inferences—Verdicts—Case at Bar.*—While no intendment can supply an omission from the record in a criminal case of that which is material, all proper inferences may and must be drawn from that which does appear. The court has the right to deduce from the record all reasonable and necessary inferences, and if the prisoner has supplied omissions in the record, the court will not disregard them. The record in this case sufficiently shows that the verdict was unanimous, was rendered in open court in the presence of the prisoner, and was otherwise free from any infirmity.

. CRIMINAL LAW—*Jury—Consultation—Constructive Presence.*—The jury, while in their room in the court-house consulting of their verdict, are still constructively in the presence of the court, and not in the charge of an officer, or out of court.

5. CRIMINAL LAW—*Trial—Duration—Presence of Prisoner.*—The trial of a criminal case begins with the arraignment of the prisoner and ends with the sentence pronounced upon him by the court. After judgment, it is not error to hear the statement of counsel for the prisoner in his absence that he has no bills of exception to offer.

Error to a judgment of the County Court of Isle of Wight county, rendered August 7, 1900, whereby the plaintiff in error was sentenced to the penitentiary for eighteen years on a verdict of guilty of murder of the second degree.

*Affirmed.*

The opinion states the case.

*Coalter & Wise,* for the plaintiff in error.

*Attorney-General A. J. Montague,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

Gilligan was indicted in the County Court of Isle of Wight for the murder of C. B. Turner, was tried, found guilty, and sentenced to confinement in the penitentiary for the term of eighteen years.

The case presents some unusual features. No bill of exception was taken during the trial, and there is, therefore, no record of the rulings of the court upon the admission of testimony, upon the instructions to the jury, nor of the evidence introduced upon the trial.

After the prisoner had been conveyed to the penitentiary, a transcript was obtained of the record as it appears upon the order book of the County Court of Isle of Wight county, and upon that transcript a writ of error was awarded, and the case is now before us.

Upon his arraignment in the County Court, the prisoner

demanded to be tried in the Circuit Court, which motion was refused, and this action of the court constitutes one of the assignments of errors before us.

The ruling complained of was clearly right. By acts of 1893-'4, page 270, section 4016 of the Code was amended. The provision under which indictments for felonies punishable by death which had theretofore been removed, upon motion of the prisoner, to the circuit courts was omitted, and the county courts were clothed, except where otherwise provided, with exclusive original jurisdiction for the trial of all presentments, indictments, and informations for offences committed in their respective counties.

The contention of the prisoner's counsel is that, by an act passed during the session of 1891-'2 (Acts 1891-'2, p. 973), which was not amended by the amendment to sec. 4016 just referred to, the right to remove the case to the circuit court was preserved. In this view we cannot concur. The act of 1891-'2 merely provides that the right of removal, which at that time undoubtedly existed, was to be exercised by the prisoner before a motion for a continuance was made by him, and not thereafter. The reason for the enactment of this statute is obvious. The right of removal had been resorted to as a means of delaying the administration of justice. The prisoner would defer making a demand which divested the jurisdiction of the County Court until all preparation had been made for his trial, and then defeat this preparation by removing the case to the Circuit Court. It cannot be doubted that the Circuit Court, when it took jurisdiction of a case removed to it from the County Court, received and tried it under its original jurisdiction, and section 4016 as amended by the Acts of 1893-'4 expressly declares that county courts shall have exclusive jurisdiction of such a case as that under consideration. The act of 1891-'2 could not, standing alone, have conferred the right of removal, and, if it did,

then being inconsistent with the more recent act of 1893-'4, it must perish. The two cannot stand together.

This view of the law renders it unnecessary to consider the effect of an act passed at the session of the General Assembly of 1899-1900.

The next assignment of error arises upon the record of the proceedings in the County Court of June 23, 1900, which is as follows:

"A. C. Gilligan, who stands indicted of murder, was again led to the bar in the custody of the sheriff of this county, and the jury which has been empanelled and sworn for his trial, and adjourned on yesterday, appeared in court according to their adjournment, and, having heard in full the argument of counsel, retired to their room to consult of their verdict as follows, to-wit: ' We, the jury, find the prisoner, A. C. Gilligan, guilty of murder in the second degree as charged in the within indictment; and ascertain his term of imprisonment to be eighteen (18) years in the penitentiary;' whereupon *the prisoner, by his counsel, moved the court not to proceed to judgment upon the verdict aforesaid,* and further moved the court to have *the verdict of the jury* set aside as contrary to the law and the evidence, and grant the prisoner a new trial, which said motions were continued until to-morrow morning at ten o'clock. And the prisoner, A. C. Gilligan, was again remanded to jail."

The contention of the prisoner is, first, that a verdict upon an indictment for a felony must be rendered by the jury in open court in the presence of the prisoner, and received and recorded by the court; that these essential facts must appear from an inspection of the record, and no intendment will supply their omission, or the omission of any one of them; that the maxim *omnia praesumuntur rite et solemniter esse acta* has no application to records made in trials for felony, and that courts cannot resort to any presumption to supply the omission from the record of that which should appear by the record.

To all this we give an unqualified assent. The queston re-
mains, what does the record before us establish?

It is earnestly argued that the extract which we have
above quoted does not show that the verdict was rendered
in open court; that all the averments of the record may
be true, and yet that the verdict may not have been
agreed upon by all of the jurors, and that it may have
been rendered elsewhere than in the presence of the court
and the prisoner.    Reliance is placed in support of this posi-
tion upon the case of *Commonwealth* v. *Cawood*, 2 Va.
Cas. 527.   In that case Benjamin Cawood was put upon his
trial for a felony in the county of Washington.   The trial was
greatly protracted, and on the 8th and last day of the court the
jury retired to consult of their verdict, and after some time
returned and declared that they could not agree.   Thereupon
the jury was discharged, and the case was continued until the
next term.   At the next term of the court, when the prisoner
was again led to the bar, he prayed that the venue for his trial
might be changed to some other county, and thereupon it was
removed to the Circuit Court of Wythe.   When put to the bar
for trial in Wythe county, the prisoner moved that he be "dis-
charged from imprisonment because it does not appear by the
record that the indictment against him was found by the grand
jury."   Thereupon, under the practice that existed at that time,
the question presented being one of novelty was, with the con-
sent of the prisoner, adjourned to the General Court to say:

"1.  What is the legal effect of an omission, on the part of the
Clerk of the Circuit Court of Washington, to enter on the order
book that the grand jury at the last April term of that court
had found an indictment against Benjamin Cawood, David
Prator, and Mary Prator, 'A True Bill?'

"2.  Can such an omission be supplied by resorting to the
paper purporting to be an indictment, copied into the record

by the Clerk, and the endorsement thereon purporting to have been made by the grand jury, finding it to be a true bill?

"3. Does the subsequent plea of not guilty, pleaded by the prisoner, Benjamin Cawood, found in the record, cure such omission as to him?

"4. If the omission aforesaid cannot be supplied by resorting to the paper copied into the record as an indictment, and the endorsement thereon, 'A True Bill,' and if the subsequent plea of not guilty, pleaded by the said Benjamin Cawood, does not preclude him from making this objection, is he to be discharged from imprisonment?"

In response to the questions thus submitted, the General Court held that,

" When a bill of indictment is found by the grand jury and endorsed 'a true bill' by the foreman, it should be brought into court, presented by the grand jury, and then the finding should be recorded.

"An omission to record the finding cannot be supplied by a paper purporting to be an indictment, with an endorsement 'a true bill,' signed by the person who was foreman of the grand jury at that term.

" Nor can it be supplied by the recital in the record that he stands indicted, nor by his arraignment, nor by his plea of not guilty. It cannot be intended that he was indicted. It must be shown by the record of the finding. The recording of the finding of the grand jury is as essential as the recording of the verdict of the jury."

A distinction is to be observed between the transcript of the record, and the record itself. It is obvious that the paper purporting to be an indictment, with the endorsement upon it "a true bill," while copied into the transcript of the record was no part of the record made and entered by the court. *Cawood's Case* has remained unquestioned from the time it was decided in 1826, has been frequently cited with approval, and we have

no disposition to disturb so venerable a landmark in our criminal jurisprudence.

But while no intendment can supply an omission from the record of that which is material, all proper inferences may, and must be, drawn from that which does appear, and while the presumption that all things have been properly done in a court of record cannot be resorted to in a criminal case, it is equally true that there can be no presumption of error.

With these principles in view, let us examine the record of what occurred upon the 23d day of June, 1900.

We have already quoted it at large. Every word of what has there been transcribed imports absolute verity. It appears that upon that day the prisoner was led to the bar in the custody of the sheriff; that the jury appeared in court according to their adjournment, and that, having heard argument of counsel, they retired to their room to consult of their verdict, as follows, to-wit: "We, the jury, find the prisoner, A. C. Gilligan, guilty of murder in the second degree as charged in the within indictment; and ascertain his imprisonment to be eighteen (18) years in the penitentiary." Pausing here for a moment, we find that the record thus far discloses that the court, the jury, and Gilligan were present together on the morning of that day in the court-room. The jury retired to consult of their verdict. They left the Judge and the prisoner in the court-room, but the jury, when they retired to consult of their verdict, were still constructively in the presence of the court. They were in the jury-room, an apartment provided for the jury in every court house, and the jury while remaining there in consultation were constructively in court, and not in the charge of an officer, or out of court. *Longley* v. *Commonwealth, ante* p. 798.

There is omitted from the record what usually appears therein after the statement that the jury retired to their room to consult of their verdict, viz: that they "after some time returned into court with the following verdict." We find upon the

record of the court the statement solemnly recorded by the court that "the jury retired to consult of their verdict as follows to-wit:" This entry is not upon a loose paper copied into the record, as was the indictment in Cawood's case, *supra*, but is, we repeat, a part of the record in its strictest sense. The jury retired to consult of "their verdict as follows to-wit:" the words "to-wit" being "used to call attention to a more particular specification of what has preceded." Webster's International Dictionary (edition 1895). In other words, having stated that the jury retired to consult of their verdict, the result of their deliberation is then given, and the verdict arrived at is spread at large upon the record, and this we think sufficientlv. indeed completely, identifies the verdict recorded as the one rendered by the jury.

The only remaining doubt or difficulty which can be discovered in the record is the omission to recite that the jury "after some time returned into court with their verdict." But if the jury are shown by the record to have been in the presence of the court; if there is nothing in the record to indicate their departure from the court, then from necessity their verdict must have been rendered in the presence of the court. Immediately after the recital in the record of the verdict, in the same paragraph, in the same sentence, is the statement, "whereupon the prisoner, by his counsel, moved the court not to proceed to judgment upon the verdict aforesaid, and further moved the court to have the verdict of the jury set aside as contrary to law and the evidence, and grant the prisoner a new trial." If there were any doubt that the court, the prisoner, and the jury were in the mutual and actual presence of each other from so much of the record as has been before considered, that doubt, it seems to us, is removed and put at rest by the action of the prisoner himself.

But we are asked, if there be a defect in the record, will the action of the prisoner supply that defect against himself? Our

reply is, that he is to be judged by the record.  If there was a defect in the record he had the unquestioned right to rely upon and to avail himself of any error of commission or of omission made against him by the court; but we take the record as it has been made and is presented to us, and we deduce from it all reasonable and necessary inferences, and if there is an omission which the prisoner has seen fit to supply, we are not at liberty to disregard it.    The record, as made, imports absolute verity, and by it the prisoner is to be judged.    We gather, then, from the whole paragraph which we have quoted, to repeat what we have already said, that the court, the jury and Gilligan were present together on the 23d of June, 1900; that after having heard argument of counsel, the jury retired to their room to consult of their verdict; that while in their room, the place appointed for their deliberation, they were in the constructive presence of the court; that they arrived at, presented, and the court recorded, the verdict, ascertaining the guilt of the prisoner to be murder in the second degree, and fixing his imprisonment in the penitentiary for a term of eighteen years.    Whereupon the prisoner moved to set aside the verdict, says the record.    " Whereupon," we admit, does not necessarily imply immediate, instantaneous action.    Whether it has that meaning will depend upon the context; but it does imply action in consequence of and without change in the facts antecedently stated as the moving cause, and "after which," "upon which," "in consequence of which" the subsequent fact took place.    Will it be presumed in the face of these averments that there was any irregularity about that verdict; that it was not the unanimous verdict of the jury; that it was not rendered in open court; or that there was inherent in it any infirmity which affected its validity?    Taking the facts as they appear from the record, and making from them merely reasonable inferences, supplying by presumption no fact whatsoever, we are bound to conclude that the verdict was regularly arrived at, rendered, and recorded.

In *Crump* v. *Commonwealth*, 98 Va. 833, it was contended that the verdict was not signed by the foreman of the jury, nor rendered in open court, but Judge Riely, speaking for this court, summarily disposed of these objections. That learned and lamented Judge had no hesitation in accepting as a part of the record for all purposes what the prisoner had seen fit to introduce, and considered the motion made by the prisoner immediately upon the rendition of the verdict sufficient to show that it had been rendered in open court. See also *Sperry's Case*, 9 Leigh, at page 626.

Another assignment of error is stated as follows: "That the record not only fails to show that your petitioner was present in court on August 20th, when the final proceedings in the case were had, but shows affirmatively that he was confined in the jail in the city of Petersburg."

The record does, in fact, show what is thus stated, but it shows a good deal more. The verdict, as we have seen, was rendered on the 25th day of June, 1900; a motion for a new trial was made; the court adjourned until the following morning, and the prisoner was remanded to jail. On the 25th of June, 1900, it appears from the record that the court met pursuant to adjournment, and the prisoner, "who stands convicted of murder, was again led to the bar in the custody of the sheriff;" and the court, having heard the argument of counsel in arrest of judgment and on the motion to grant the prisoner a new trial, continued the case until the 26th. On that day the court met pursuant to adjournment, and the prisoner was again led to the bar in the custody of the sheriff and asked the court to continue the further argument of his motion until the first day of the next term, which was done, and the prisoner was remanded to jail. And, at another day, at a county court, held at the court-house of Isle of Wight, the prisoner was again led to the bar in the custody of the sheriff, and asked the court to continue his motion heretofore made in arrest of judgment and to

VOL. XCIX—104.

set aside the verdict of the jury, to the next term of the court, in order to allow him time for the more convenient preparation and consideration of any bills of exception which may be presented, and the court granted that motion, and thereupon the prisoner was again remanded to jail. And, at another day, at a county court for the county of Isle of Wight, held the 7th day of August, 1900, the prisoner was again led to the bar in the custody of the sheriff, and moved the court to continue his motion in arrest of judgment and for a new trial until the September term, but this the court refused to do. And the court, having maturely considered the prisoner's motions for an arrest of judgment, and to set aside the verdict of the jury and grant him a new trial, doth overrule the said motions, and it being demanded of the prisoner if anything he had or knew for himself to say, why the court should not now proceed to pronounce judgment against him according to law, and nothing being offered or alleged in delay of judgment, it is considered by the court that the said A. C. Gilligan be imprisoned in the penitentiary of this Commonwealth for the term of eighteen years; and it is ordered that the proper officer, designated by law, do, as soon as practicable after the adjournment of this court, remove and safely convey the said A. C. Gilligan from the jail of this county to the said penitentiary, therein to be kept, imprisoned, and treated in the manner directed by law. And, on motion of the prisoner, the leave of the court heretofore granted him to prepare his bills of exception to the several opinions of the court, given against him during the progress of the trial of his case, is enlarged, and further time is granted him until August 20, 1900, to prepare his said bills of exception; and thereupon the said A. C. Gilligan was again remanded to jail. And finally, on the 20th of August, 1900, the court met pursuant to adjournment, and counsel announced in open court that the prisoner had no bills of exception to offer.

Nothing was done in the court upon that day. Gilligan had been afforded every opportunity to prepare his case for the appellate court. It had been continued from time to time, and from term to term, at his instance. He had been called upon to know if he had anything to say, and nothing being offered, the court sentenced him, and directed the proper officer to convey him as soon as practicable to the penitentiary there to be imprisoned in the manner directed by law. On the 20th of August, nothing was done in his case, counsel stating to the court that the prisoner had no bills of exception to offer. The trial of a criminal case begins with the arraignment of the prisoner, and ends with the sentence pronounced upon him by the court. In this case, as we have seen, every formality had been observed. The prisoner had received his sentence, and was awaiting his removal to the penitentiary, and had counsel made no statement on the day in question, there was nothing further for the trial court to do. The preparation of bills of exceptions is confided to counsel for the prisoner, and their contents are either agreed upon by counsel for prisoner and the attorney for the Commonwealth, or, in case of disagreement, the matters in dispute between them are submitted to and disposed of by the court.

We are aware that courts rigidly enforce the prisoner's right to be present at every stage of the trial from his arraignment to the sentence, when anything is to be done which can affect his interest. We are aware that no court has been more zealous and exacting in enforcing this privilege, and in requiring that it should appear from the record than this court, but we are of opinion that the rights of the prisoner in this respect, and, indeed, in all respects, have been fully and faithfully preserved in this case.

The judgment of the County Court of Isle of Wight is affirmed.

PHLEGAR, J., dissenting:

It is with regret and diffidence that I find myself compelled to differ with the majority of the court about the judgment which should be rendered in this case. However, believing as I do, that "a venerable landmark in our criminal jurisprudence" is being ignored, if not destroyed, and a principle overthrown which was established in wisdom for the protection of life and liberty, I feel constrained to dissent, and to give my reasons therefor.

Three rules seem to have been so firmly settled in criminal jurisprudence that no one denies them.

First. That a verdict must be rendered by the entire jury in open court, and in the actual presence of the prisoner, or it is invalid.

Second. That the record must show affirmatively that all the essential formalities in the procedure have been complied with; that a failure to do so constitutes error on the face of the record, and that they cannot be dispensed with or affected by the *consent* of the accused.

Third. The presumption that a court of general jurisdiction acts rightly cannot supply the substantive or essential parts of the record in a criminal case. *Hopt* v. *Utah*, 110 U. S. 574; *Sperry's Case*, 9 Leigh, 623; *Spurgeon's Case*, 86 Va. 652; *Jones' Case*, 87 Va. 65; *Cawood's Case*, 2 Va. Cases, 527.

These rules have been strictly adhered to in this State. In *Cawood's Case, supra,* the prisoner was arraigned on a paper purporting to be an indictment found at the same term of the court, endorsed "a true bill" by him who was the foreman of the grand jury then empanneled, pleaded not guilty to the indictment and submitted to two trials. The record said: "Benjamin Cawood, who stands indicted for murder  *  *  *  was thereof arraigned," yet because there was no order affirming that the grand jury found the indictment, he was held not to have been indicted. Exactly the same state of facts, except

that there was but one trial, appeared in *Simmons' Case*, 89 Va. 156, and the same judgment was entered. In *McKinney's Case*, 8 Gratt. 589, an indictment was properly found against three persons, but the order of court recording the finding used the wrong given name for one of them, and *he* was held not to have been indicted. In *Spurgeon's Case*, 86 Va. 652, a new trial was granted by this court because the record did not show affirmatively that the list which was furnished the sheriff with the writ of *venire facias* was furnished by the judge of the court. A new trial was awarded *Charlie Jones*, 87 Va. 63, because it did not affirmatively appear that a writ of *venire facias* was issued, although the record was, " Thereupon came a jury to-wit (naming them), who, being selected and tried in the manner prescribed by law for the selection and trial of juries in cases of felony." A new trial was awarded Sperry because the record did not show that on the second day of his trial he was taken into court. *Sperry's Case*, 9 Leigh, 623.

Many similar cases might be cited, but these are enough to establish the rule that "all of the essentials to the judgment must affirmatively appear, and none can be supplied by intendment, inference, or argument."

The illustrations of Judge Brockenborough in Cawood's case are very pertinent to this case. They are: First, an issue made up in fact but not stated in the record; jury sworn to try *"the issue joined,"* verdict and judgment rendered; judgment set aside because record did not show that issue was joined; second, an issue appears in the record, a jury sworn and a judgment rendered for "the damage assessed by the jury," but no other noting of the verdict, judgment set aside because verdict did not sufficiently appear.

Let us apply these principles and illustrations to this case. The record is, "and the jury, having heard in full the argument of counsel, retired to their room to consult of their verdict as follows, to-wit:　We, the jury, find the prisoner, A. C. Gilligan,

.guilty of murder in the second degree, as charged in the within .indictment, and ascertain his term of imprisonment to be ·eighteen (18) years in the penitentiary; whereupon the prisoner, by his counsel, moved the court not to proceed to judgment .upon the verdict aforesaid, and further moved the court to have .the verdict of the jury set aside as contrary to the law and the ·evidence, and grant the prisoner a new trial; which said motions were continued until to-morrow morning at ten o'clock. And :the prisoner, A. C. Gilligan, was again remanded to jail."

This order shows that the jury retired to their room, and .there it leaves them. To a certain extent, they were, as in the *Longley Case, ante* p. 798, in the constructive presence and under the control of the court, but they were not in the actual presence ·of the prisoner, and until they again came into his actual pres- ·ence they could render no verdict. Actual, corporal presence, .is the presence required by the law. To say that the jury were in the *constructive* presence of the court, and the prisoner in its ·*actual* presence, is to say that the prisoner and the jury were :not together.

When and how did the jury return into court? What inti- .mation is there in the record that they did return, except that the :form of the verdict which they retired to consider of appears in .the order? If the court had told them to consider and say whether the prisoner was guilty of murder in the second degree ·and should be confined in the penitentiary eighteen years, no more apt words could have been chosen for the order than those which appear. " The words 'to-wit' are used to call attention to a more particular specification of *what has preceded*," not to introduce what succeeded in point of time. What had pre- ceded? The retirement of the jury to consider what their ver- ·dict should be, and, unless the use and meaning of the videlicet is reversed, the words which follow only show that they were considering whether it should be in the words quoted. It is ·only by argument that it can be affirmed that the jury returned

that verdict, or any verdict, in open court. The argument, as I understand it, is: There could be no verdict unless the jury returned it in open court; they "retired to consult of their verdict as follows;" what follows is their verdict, therefore they returned into court. It seems to me that it is arguing in a circle to say, they came into court because it is a verdict; it is a verdict because they came into court.

But if we admit that the record shows that the jury adopted the words quoted as their verdict, the question still remains: How did it get into court? It is admitted by all that it could properly be rendered only in open court by the entire jury, and that it must in some way appear that this was done. For anything which appears in the record the foreman alone may have presented it, or the sheriff may have conveyed it to the court from the jury room. It is only by saying such a course was wrong and should not be inferred, that the conclusion is reached that it was not pursued. The answer is, being a material fact necessary to sustain the judgment, no inferences are admissible, and the *absence of proper averment is the error*. We need not presume that it was wrongfully done. We simply don't know how it was done, and therefore cannot say that it was rightly done.

But it is further argued that soon thereafter, or at least as a consequence of the appearance in court of what is called the verdict, the prisoner "moved the court not to proceed to judgment on the verdict aforesaid," and to "set aside the verdict of the jury," and the conclusion is reached that this action of the prisoner has removed any doubt which may have existed in regard to the proper delivery of the verdict.

In other words, because a prisoner who is about to be sentenced on an improper finding which the court calls a verdict, makes the two motions which the law prescribes for avoiding such a sentence, and in doing so necessarily called it a verdict, he has validated the invalid and supplied a hiatus in the record.

If so, the means provided for his protection have become snares and pitfalls. If he cannot waive the actual finding of an indictment by pleading to it; if he cannot consent to the court imposing punishment on him without a verdict; if he does not waive the lack of the record of the finding of the indictment by moving to quash the indictment—*McKinney's Case, supra*—how does he waive the record evidence of the actual presence of the jury, and of the proper rendition of a verdict by asking the court not to proceed on the verdict because it is illegal?

To support the conclusion that the record sufficiently shows the proper rendition of the verdict, it is said "that while no intendment can supply an omission from the record of that which is material, *all proper inferences may and must be drawn* from that which does appear." The position of the majority of the court seems to me to depend largely on the correctness of this proposition. I cannot give my assent to it. Where affirmative averment is required, inference is excluded. There can be no necessity or use for inference when the fact is averred. " Inference is a proposition, or truth *drawn from another* which is laid down as true." That the jury came into the court room and delivered a verdict in the prisoner's presence is a proposition which is not directly asserted in the record, but must be drawn from another, viz., that the form of a verdict is there which the prisoner moved to set aside, and asked that judgment thereon be arrested.

While by the record the jury are in their room, I am unwilling to start the prisoner to the penitentiary.

On the other points discussed in the opinion of the majority of the court I concur. I had some doubts on one of them, but they were removed by the opinion.

BUCHANAN, J., concurs with PHLEGAR, J.

*Affirmed.*