# Richmond

LUTHER DURHAM, JR. v. COMMONWEALTH OF VIRGINIA.

December 4, 1967.

Record No. 6584.

Present, Eggleston, C.J., and Buchanan, Snead, I'Anson and Gordon, JJ.

*David G. Simpson* (*Philip Barney*, on brief), for plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for defendant in error.

BUCHANAN, J., delivered the opinion of the court.

On January 18, 1966, a grand jury of Dinwiddie county returned an indictment against Luther Durham, Jr., herein called defendant, for the murder of John A. Crocker in that county in February, 1963. Represented by attorneys previously appointed to defend him, he was arraigned on July 21, 1966, and entered a plea of not guilty. A jury heard the evidence, found him guilty of murder in the second degree and fixed his punishment at twenty years in the penitentiary. He was sentenced accordingly and we granted a writ of error to that judgment. The principal, and controlling, question here is whether a written statement signed by him was admissible in evidence under the rules promulgated by the United States Supreme Court in *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602.

On February 27, 1963, John A. Crocker, operator of a service station on Route No. 1, in Dinwiddie county, was robbed of about eighty dollars and was shot and killed. He was found about 10 p.m. of that day lying face down near a sink on a floor of the car washing space of the service station. He had been shot once in the left chest and three other bullet marks were found over the sink.

E. M. Lloyd, investigator in the Department of State Police, began an investigation next day, February 28, at the request of the county sheriff, A. Hill Burton. His investigation, during which he talked to defendant numerous times about numerous other cases, was not fruitful until the following January, 1964, when he first learned that defendant was involved. Defendant was then being tried for burglary in the Circuit Court of Chesterfield County.* At the conclusion of that case on January 23, 1964, defendant said to Lloyd, "I want to see you and talk to you about something you have not asked me about." Lloyd saw him next day, January 24, in the Chesterfield jail. He testified that the defendant then said, "I want to tell you about the man at the service station, killed at Petersburg," and, said Lloyd, "At that time I informed him he did not have to say anything. That any statement would be free and voluntary on his part. I would not mistreat him, or abuse him, offer any reward or any promises to him to make a statement to me. Anything he said could be used for or against him in a court of law, and he was entitled to counsel. And after that, he proceeded to tell me as to when they left King George County, how they were traveling, who was with him and what transpired after they got there."

---

* The defendant prior to the present case had had many involvements with the law. His testimony and exhibits made reference to eight prior convictions for felonies, including grand larceny, burglary, breaking and entering, and murder.

Defendant's interrogation was not completed in this interview because officers from Halifax county came to take him there. On January 30, Lloyd went to Halifax county "and finished the questions of his statement he started on the 24th."

These two interviews of January 24 and January 30, 1964, were in question and answer form, apparently in the handwriting of Lloyd. They were not offered in evidence by the Commonwealth but were filed as exhibits by the defendant. Thereafter, on March 27, 1964, Lloyd and Sheriff Burton picked up the defendant at the jail of Hanover county and drove with him to the service station where Crocker was killed. There defendant showed them what had occurred and he was then taken to an office of the Virginia State Police in Petersburg, where he was questioned by Lloyd in the presence of Sheriff Burton. The questions asked him and his answers were taken down and transcribed by a secretary and then signed by defendant. This statement was introduced by the Commonwealth over the objection of the defendant at defendant's trial on July 21, 1966, and its substance was as follows:

Defendant and Paul Lacy Sprouse left King George county in a car driven by the defendant with the purpose of robbing a jewelry store in Petersburg. An occupied automobile was in front of the store so they did not stop but drove on to the service station, arriving there about 8 p.m. There they had the car serviced and talked to the attendant [Crocker] for some time. Sprouse irritated the attendant by answering the telephone several times. Defendant had put his gun on the seat of the car beside a .32 automatic belonging to Sprouse. When defendant next saw his gun Sprouse had it in his hip pocket with his hand on it, arguing with the attendant and telling him it was a holdup. Defendant drove the car inside the station on Sprouse's order and then went outside and was standing there when he heard three shots and then another. He ran into the station, found the attendant lying on the floor and Sprouse on his knees beside him. Defendant backed the car out, Sprouse came running out and jumped in and they drove back to Hopyard Farm, in King George county. Sprouse gave him $17 and gave his gun back, which defendant sold shortly thereafter in North Carolina.

Prior to the trial defendant filed a motion to suppress all the statements previously made by him on the ground that they were involuntarily given. On a hearing of the motion on March 10, 1966, defendant testified that he was twenty-three years old, that his school-

ing ended with the third grade and he could not read; that before he went to Halifax he talked to Investigator Lloyd about the Dinwiddie killing and that later when they wanted to take him to Hanover county "I made a deal with him," that "he would see that I didn't get no time and that I wouldn't work hard for it if I did get time, and so I went along with him"; that when he was in Chesterfield "Mr. Lloyd said he would get me a year if I would make some statements * * and he brought out a bunch of breaking and entering charges for me to name some people and testify".

At the March 10, 1966, hearing, an attorney appointed on May 20, 1964, to defend Durham on a charge of murder in Stafford county, testified that defendant refused to talk to him except in the presence of Investigator Hall; that Hall told him that Durham was present but did not participate in the shooting in the Stafford case and that in the presence of defendant Hall stated that defendant had cooperated with the Virginia State Police in solving crimes and gave him the definite impression "that they were very much for Mr. Durham and they wished efforts to be made to help him."

The statement of March 27, 1964, began with this paragraph, which was dictated by Investigator Lloyd in the presence of the defendant, who then expressed his approval:

"I, Luther Junior Durham, alias Luther Durham, Jr., do make this free and voluntary statement to Investigator E. M. Lloyd, who is known to me to be a member of the Department of State Police, and Sheriff A. Hill Burton, who is identified to me to be the Sheriff of Dinwiddie County. I have not been threatened or given any promise of reward. I know that what I say may be used either for or against me in a court of law. I know that I am entitled to counsel."

The same language, except the reference to the presence of Sheriff Burton, was used in the statements of January 24 and January 30, and Lloyd testified that on all of these occasions he advised the defendant in substantially the same words. Sheriff Burton testified that he gave defendant no advice or information about his rights but that this was done by Lloyd.

[1] However, Investigator Lloyd testified explicitly that he did not advise Durham at any time that he had a right to remain silent or that he had a right to have counsel present at the interrogations, al-

though he knew at the first time he talked to Durham that counsel had been appointed for him.

These were fatal omissions according to *Miranda* v. *State of Arizona, supra,* 384 U.S. 436, 86 S.Ct. 1602, as shown by the following quotations therefrom taken from 86 S.Ct. at the pages indicated:

"* * Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. * *" (p. 1612)

"* * our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth. * *" (p. 1620)

"At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent. * * such a warning is an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere. * *" (p. 1624)

"The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privileges by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. * *" (p. 1625)

"Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right." (p. 1626)

All of which, of course, is very nice for the accused, but not help-

ful in the detection and punishment of crime. But having so said, the court gives this reassurance to those who might be in doubt:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (p. 1630)

It seems quite clear, however, that the statements made by Durham, under the circumstances in which they were made, do not qualify as voluntary statements under the *Miranda* formula so as to make inapplicable the procedural safeguards held to be indispensable to the protection of the Fifth Amendment privilege.

[2] The Commonwealth argues that the *Miranda* rule is not applicable because the trial of this case began on March 10, 1966, when the trial court heard evidence on defendant's motion to suppress his statements, which the court overruled on July 21, 1966.

In *Johnson* v. *State of New Jersey*, 384 U.S. 719, 733, 86 S.Ct. 1772, 1781, it was held that *Miranda* (as well as *Escobedo* v. *State of Illinois*, 378 U.S. 478, 84 S. Ct. 1758) "should apply only to cases commenced after those decisions were announced." The *Miranda* decision was announced on June 13, 1966. As we said, however, in *Gilligan* v. *Commonwealth*, 99 Va. 816, 827, 37 S.E. 962, 965, "The trial of a criminal case begins with the arraignment of the prisoner". Hence the trial of the present case began with the defendant's arraignment on July 21, 1966, after the *Miranda* rule became effective and that rule was therefore applicable to this case.

[3] Defendant also complains of the court's refusal to instruct the jury that if Durham was present when Sprouse killed Crocker, but not aiding and abetting Sprouse, they should find Durham guilty

of being an accessory after the fact, which is punishable as a misdemeanor. The evidence did not require the giving of the instruction and the court did not err in refusing it. *Cf. Snyder* v. *Commonwealth*, 202 Va. 1009, 121 S.E.2d 452.

For the error in admitting defendant's statements without the warnings required by the *Miranda* rule, the judgment appealed from is reversed and the case is remanded.

*Reversed and remanded.*