## Richmond

### John E. Dailey v. Commonwealth of Virginia.

January 15, 1968.

Record No. 6687.

Present, All the Justices.

*Bruce G. Murphy* for plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

John E. Dailey was indicted by a Grand Jury in the Circuit Court of the City of Virginia Beach for the malicious wounding of Rufus Thorpe. The defendant was arraigned and tried on September 22, 1966. He entered a plea of not guilty to the indictment and waived

trial by a jury. The court heard the evidence, found defendant guilty of unlawful wounding and referred the matter to a Probation Officer for a pre-sentence report. Following the filing of the report and a hearing thereon, the court fixed punishment at a term of four years in the penitentiary and sentenced defendant accordingly. To review this judgment, entered on November 30, 1966, we granted Dailey a writ of error.

Defendant, in his assignments of error, questions the sufficiency of the evidence; the failure of the court to suspend the sentence imposed on him; the correctness of the final order recording his conviction as one of malicious wounding instead of unlawful wounding; and further complains that his constitutional rights were violated by the action of the trial court in permitting Detective James A. Tye to testify as to certain statements made by defendant while in custody, for the reason that defendant was not advised prior to making the statements of his right to the presence of an attorney, either retained or appointed.

At the trial in the court below, the Commonwealth called two witnesses, Rufus Thorpe, the victim of the alleged assault made by defendant, and Detective James A. Tye, of the Virginia Beach Police Force. Defendant testified in his own behalf and called two witnesses, George Jones and Floyd Bailey. The altercation between defendant and Rufus had its prelude at a "Juke Joint" located in a section of Virginia Beach called "Reedtown", described as a place where "the boys gathered to drink beer, dance and to have a good time". The parties involved are identified variously by nicknames that have a Damon Runyon flavor, such as "Herrin" (Rufus Thorpe), "Whip" (Willie Snead), "Fish Hand" (Floyd Bailey), "Zickie" (defendant Dailey) and "Hooley" (a cousin of Thorpe's).

On Sunday evening, December 19, 1965, after "the boys" had gathered at the "Juke Joint", a fight ensued between Rufus Thorpe and Willie Snead. Friends of the two intervened, took Snead outside the building, and held Thorpe. Upon being released Thorpe immediately went outside and resumed fighting with Snead. After a bit Snead was sent home and the crowd dispersed. Defendant and Floyd Bailey had started walking home along Independence Boulevard, when they were overtaken by Rufus Thorpe and George Jones.

While there are some conflicts between the testimony of the Commonwealth and that introduced on behalf of defendant, it appears that Thorpe regarded defendant as a "stick-partner", meaning a bud-

dy, of Snead's. When he reached a distance of about two feet from defendant, Thorpe started jamming or poking his fingers into the chest of defendant and told him, using obscene words, that he wanted him to give a message to Snead to the effect that when he (Thorpe) saw Snead the next day he was going to whip him. When Thorpe kept punctuating his remarks by jamming defendant in the chest with his fingers, defendant told him to quit and not to put his hands on him anymore. When Thorpe failed to comply, defendant pulled out a .32 caliber revolver and fired. Defendant claims he fired into the ground to scare Thorpe. The evidence is that the bullet entered Thorpe's left arm. Thorpe testified that he knew he was shot but did not pay any attention to it until he got to his cousin "Hooley's" house, at which time an ambulance was called and he was taken to a hospital. Several days later the bullet was removed from a point near his armpit. Thorpe admitted that he had been drinking but denied that he was armed or did any thing to provoke the shooting.

The only witness, other than Thorpe, called by the Commonwealth, was Detective Tye who investigated the case on the night of the incident and obtained a warrant for defendant at that time. Detective Tye stated that he could not locate defendant until December 28, 1965, when, about midnight, he received a call from Police Headquarters that defendant was there, and that he went to Headquarters, effected the arrest and advised Dailey of his rights, his testimony on this point being:

"Q. What rights did you advise him of?

"A. I — first I identified myself to him, I was Detective James Tye of the Virginia Beach Police, and that he didn't have to say anything to me and anything he said could be held for or against him in court, and he had the right to have anyone present that he desired, a lawyer or immediate family. And then I proceeded to question him."

At this point counsel for defendant objected to the introduction of any statements made by Dailey, citing the *Miranda* decision, *infra*, and the failure of the police officer to advise the accused that he had the right to a court appointed counsel. The court overruled the objection and an exception was noted.

Detective Tye then related statements made by defendant to the effect that while he and Floyd Bailey were walking along Inde-

pendence Boulevard they were overtaken and stopped by Rufus Thorpe and George Jones; that Thorpe came up to defendant and started punching him in the chest with his fingers and telling him that he wanted him to give a message to "Whip" (Willie Snead); that Thorpe kept punching him in the chest and that he told Thorpe to quit hitting him and not to put his hands on him anymore; that he then reached in his pocket, pulled out a revolver and fired; that he did not know if he hit the boy (meaning Thorpe) or not; that he then turned around and walked away; that after he got home he received information that he had shot Thorpe and that the police were looking for him; that he went to Norfolk, caught a bus to Boston, Massachusetts, sold the pistol, and stayed there until he had spent all his money; and that he then returned to Virginia Beach and surrendered.

Detective Tye further testified that defendant told him that Thorpe, while "punching" defendant in the chest with his fingers, used obscene words in referring to Willie Snead, and that he (defendant) then ". . . got a little hot and told him to keep his hands off of him and quit punching him in the chest with his fingers . . .".

After hearing all the evidence and argument of counsel, the trial court noted the absence of any prior ill-feeling between Thorpe and defendant, and the fact that the shot was fired in the midst of a heated argument and an altercation in which defendant was not the aggressor. The court concluded, however, that defendant used more force than was necessary under the circumstances to protect himself and found him guilty of unlawful wounding.

Defendant claims that the judgment of the lower court should be reversed and final judgment entered in his favor. In light of the conclusion we reach, it is not necessary that we summarize the evidence in more detail, or appropriate that we decide whether the properly admitted evidence is sufficient to sustain a conviction. At the new trial, if one is had, the evidence may be different for various reasons. It suffices to note that this is the type of case in which matters of fact are best resolved by the jury, or the court, trying the case, for it has an opportunity to observe the witnesses, their candor, manner and demeanor, and thereby to determine the weight to be accorded their testimony.

[1] The contention that the trial court should have suspended all or a portion of the sentence imposed upon defendant raises an issue with which we are not now concerned. Furthermore, suspension of sentences is a matter normally and properly addressed to the discretion of the trial judge.

[2] The action of the court in permitting Detective Tye to testify as to certain statements and admissions made to him by defendant poses the critical and controlling issue.

The inquiry here is a narrow one. It is whether the warning given defendant prior to being questioned satisfies the procedural safeguards that must be employed before the prosecution may use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant. In *Miranda* v. *State of Arizona*, 384 U. S. 436, 479, 86 S. Ct. 1602, 1630, 16 L. ed. 2d 694, 726, the court held that no evidence obtained as a result of interrogation can be used against a person unless he is warned prior to any questioning, "that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires".

The quoted testimony of Detective Tye is the only evidence in the record as to the warning that was given to defendant. Manifestly this warning does not meet the procedural safeguards demanded by *Miranda*. And the statements made by Dailey, who at the time was in custody and under arrest, do not qualify under the ruling in that case as voluntary statements so as to make inapplicable the safeguards that are now held to be indispensable to the protection of the Fifth Amendment privilege against self-incrimination.

The Commonwealth concedes that the warning required by the Supreme Court of the United States in *Miranda* was not given, but argues that the statement made by Dailey was exculpatory in that it explained his views of the situation and was confirmed by defendant's testimony at the trial. We cannot agree with the position that this constituted harmless error. We have no way of measuring the weight that the trial court attached to the statements of defendant, made to Detective Tye, in determining his guilt or innocence, the offense he committed, or the punishment to be inflicted on him. Neither can we determine what effect these statements, and their admission, had on the presentation of his case by defendant.

The Commonwealth further argues that the rules enunciated in *Miranda* do not apply to those interrogations which occurred prior to that decision. In *Johnson* v. *State of New Jersey*, 384 U. S. 719, 734, 86 S. Ct. 1772, 1781, 16 L. ed. 2d 882, 893, it was held that *Miranda* should apply "only to persons whose trials had not begun as of June 13, 1966". This court has held, however, in *Gilligan* v. *Commonwealth*, 99 Va. 816, 827, 37 S. E. 962, 965, that "the trial of

a criminal case begins with the arraignment of a prisoner. . .". To the same effect, *Burnley* v. *Commonwealth*, 208 Va. 356, 158 S. E. 2d 108. In the instant case the defendant was arraigned and tried on September 22, 1966, after the *Miranda* rule became effective, and we hold that rule was therefore applicable. To the same effect, see our decision in *Durham* v. *Commonwealth*, decided December 4, 1967, 208 Va. 415, 158 S. E. 2d 135.

It is agreed that defendant was found guilty of unlawful wounding by the trial court and that the recitation in its final order to the effect that he was found guilty of malicious wounding was an error.

[3] Accordingly, and for the error committed in admitting statements of defendant made to Detective Tye without the warnings required by the *Miranda* rule, the judgment appealed from is reversed and the case is remanded. It is ordered that any further prosecution by the Commonwealth of defendant on the indictment in this case be for no offense greater than the unlawful wounding of Rufus Thorpe as charged therein.

*Reversed and remanded.*