**James C. KEISTER, Petitioner,**

v.

**J. D. COX, Superintendent, Virginia State Penitentiary (Formerly C. C. Peyton), Respondent.**

**Civ. A. No. 69–C–3–H.**

United States District Court
W. D. Virginia,
Harrisonburg Division.

Dec. 30, 1969.

W. W. Wharton, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for petitioner.

W. Luke Witt, Asst. Atty. Gen., Richmond, Va., for respondent.

WIDENER, District Judge.

This petition for *habeas corpus* was filed *in forma pauperis* by James C. Keister, a prisoner of Virginia, who was convicted of first degree murder in the Circuit Court of Rockingham County on July 21, 1966, and sentenced to 35 years in the penitentiary.

The homicide took place on December 29, 1965. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) was decided June 13, 1966; Keister was tried July 20–21, 1966; thus the *Miranda* rules apply to Keister's confession.

32. Id.

**1174**

Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Keister was charged with killing one Norvell Baker, apparently in a dispute over who was going to compensate a lady of doubtful virtue with whom they were keeping company. The crime was committed several miles from Harrisonburg in a rural section of the county. Keister was taken into custody by the city police of Harrisonburg, at the instance of the Sheriff of Rockingham County and ultimately brought to the county jail for questioning.

Keister had been drinking; that is undisputed. The extent of his drinking, and the effect of it on him, however, is the subject of great dispute. He denies any recollection of the killing, or of the confession, or of showing the officer where the gun used in the killing was buried under a log. The Virginia court found Keister not to be so intoxicated as to render his confession inadmissible, and that finding is accepted by this court. The evidence is in conflict as to the extent and effect of Keister's drinking.

Keister was represented in this hearing by most able counsel, and at the beginning of the hearing all grounds for *habeas corpus* in Keister's petition were waived except as to the admissibility of the confession and the gun used in the killing.

When petitioner was taken into custody by the Harrisonburg city police he was first taken to the city police headquarters and a short while later removed to the county jail by the Sheriff of Rockingham County. He was arrested by the Sheriff on a charge of public drunkenness, but the actual reason for his detention was that he was suspected of committing the murder with which he was later charged.

At the county jail he was not interrogated by the officers, but they called the Commonwealth's Attorney who came to the jail to do the questioning. This was on December 29, 1965, a few hours after the crime, and the Commonwealth's

Attorney advised Keister he wanted to question him about the killing. Before questioning him, the Commonwealth's Attorney gave him all the required pre-*Miranda* warnings; that he could remain silent and had to make no statement; that anything he said could be used against him; and that he had a right to call a lawyer and have the lawyer present. Keister said he would like to call one attorney on the telephone and did so, but the attorney did not answer. He then called another attorney, but was told that he was out. He then said "To hell with it, I don't want a lawyer, I want to tell you what happened." *Keister was never advised that an attorney would be appointed for him if he had no funds with which to employ one.*

He then related to the Commonwealth's Attorney, verbally, the story of the killing, and immediately thereafter signed a written confession prepared by the Commonwealth's Attorney. After this, he took the officers to where he had hidden the murder weapon under a log. This was about 12 miles from Harrisonburg and near the scene of the murder. The officers took him to the scene, and he led them about ½ mile to the gun, crossing 3 or 4 wire fences on the way. The gun was buried in the ground under a log.

This is the fourth time the matter of the introduction of the gun and the confession has been raised: first on a preliminary motion to suppress the evidence; second at the trial; and third in a state *habeas corpus* hearing. At the *habeas corpus* hearing in the Circuit Court of Rockingham County, there was evidence from which the trial judge could, and obviously did, properly believe that the *Miranda* warning with respect to an appointed attorney was given Keister. As a result of the oral hearing in this court, it is clear that no such warning was given.

## THE CONFESSION

The court is of opinion that the confession is not admissible as evidence against Keister.

■ The Commonwealth's Attorney who was in charge of taking the confession admits that no warning was given to Keister, prior to his confession, that he had a right to a court appointed attorney, if he were without funds to employ counsel. The Commonwealth strongly insists that Keister waived this right by his action in calling unsuccessfully two attorneys and in then making the above quoted statement. The court rejects this argument for the reasons set forth below.

The Supreme Court of Appeals denied a writ of error in Keister's criminal appeal March 3, 1967. On June 10, 1968, the case of Cardwell v. Commonwealth, 209 Va. 68, 161 S.E.2d 787, was decided. The factual situation there is nearly indistinguishable from the one presented here, and the Virginia court said:

"In *Miranda, supra,* the Court held that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, certain procedural safeguards are required to protect the constitutional privilege against self-incrimination. In addition to the traditional warning that the person has the right to remain silent and that anything he says can be used against him in a court of law, he must be told prior to any questioning 'that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' [citations omitted]

"It is perfectly manifest that neither the oral warnings of Captain Stigall nor the printed statements in the written confession advised the defendant before his in-custody interrogation that he had the right to the presence of an attorney and that if he could not afford an attorney one would. be appointed for him by the court if he so desired. Thus the constitutional rule delineated in *Miranda* and followed by this court in *Durham* [Durham v. Com., 208 Va. 415, 158 S.E.2d

135], *Dailey* [Dailey v. Com., 208 Va. 452, 158 S.E.2d 731] and *Johnson* [Johnson v. Com., 208 Va. 740, 160 S.E.2d 793], *supra,* was not complied with, and defendant's statements did not qualify as a voluntary confession." 161 S.E.2d 787, 788.

\*   \*   \*   \*   \*   \*

"Defendant was told by Captain Stigall before the questioning began 'that he had the right to an attorney,' but he was not told that if he could not afford an attorney one would be appointed for him prior to any questioning if he so desired. The statement in defendant's confession that 'I expressly waive my right to the advice of counsel,' is not a waiver of his right to have court-appointed counsel. One cannot knowingly and intelligently waive a right which he was not told he had. Moreover, the statement in defendant's written confession expressly waiving his right to the advice of counsel was not made until after he had orally confessed the crime charged." 161 S.E.2d 787, 789.

The court has considered the cases of Commonwealth v. Penn, 210 Va. 213, 169 S.E.2d 409, and 210 Va. 229, 169 S.E.2d 419 (1969), but considers itself bound by *Miranda* as followed by *Cardwell,* because Keister could not " \* \* \* *waive a right which he was not told he had.*" 209 Va. 68, 71, 161 S.E.2d 787, 789. At a new trial the confession will be inadmissible as will be any oral statements made to the authorities while in custody. Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).

### THE GUN

■ The matter of the gun is a different situation. The court is of opinion that the gun was not necessarily made inadmissible merely because Keister showed the police where the gun was without receiving the proper warning as to appointed counsel under *Miranda.*

It should be said, and this is persuasive here, that a distinction has been

made between physical evidence, although admittedly the result of actual compulsion which was not present in the instant case, and communication or testimony.

In Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed. 2d 908 (1966) the court said of the Fifth Amendment:

"The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

Of greater persuasion is the case of Killough v. United States, 119 U.S.App. D.C. 10, 336 F.2d 929 (1964). There the body of a homicide victim was found as a result of an admittedly illegal confession. The holding of the court was that evidence concerning the body would be admissible at a retrial of the case, the court saying:

"The mere fact that the body was discovered at the particular time it was discovered because of Killough's disclosure of its whereabouts in his illegally secured confessions is not determinative." 336 F.2d 929, 934.

The record is confused as to direct statements Keister may have made to the officers concerning the gun, and of course anything he may have *said* to the officers, while in custody, is inadmissible, as is the written confession, but there is also evidence from which it may be inferred that Keister simply acceded to a request to show the officers where the murder weapon was.

■ The record has much circumstantial evidence to connect Keister with the gun, and more may be produced at a new trial. For example, the statement Keister made to one Lena Collins: "Said he had taken them to get the gun." While the statement to Lena Collins was made while Keister was in custody, it is admissible because it was not made to the officers, but made voluntarily to an acquaintance and was not the result of an inquiry by the authorities.

*Miranda* makes the distinction:

"By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody  *  *  *." 384 U.S. 436, 444, 86 S.Ct. 1602, 1612.

*  *  *  *  *  *

"Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U.S. 436, 478, 86 S.Ct. 1602, 1630.

■ The Fifth Amendment then, as construed by Miranda v. Arizona, operates to restrict *statements* made, while in custody, as a result of police interrogation. It does not operate to restrict volunteered statements, and it does not necessarily operate to restrict physical evidence, or *acts* of the accused while in custody, as distinguished from his verbal or written communications. Under *Schmerber* and *Killough* then, the gun is not necessarily made inadmissible by the mere fact that Keister showed the officers its whereabouts having not been first given the requisite warning under *Miranda*. The Commonwealth will have to identify the gun other than by *statements* made by the accused while in custody as a result of police interrogation. This matter will have to be decided under Virginia rules of evidence at a new trial.

The court does not mean to imply that under all conceivable circumstances the gun would be admissible. As expressed in Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1956), " *  *  * due process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct." 352 U.S. 432, 436, 77 S.Ct. 408, 410. The record does not show this rule was violated in Keister's case.

The Commonwealth should arrange to try Keister again within ninety days

from this date in accordance with the principles herein expressed, or else release him.

An order is this day entered consistent with this opinion.