**People of the State of Illinois, Appellee, v. Rodger Braun, Defendant-Appellant.**

**Gen. No. 67–137.**

Fifth District.

September 13, 1968.

John J. Vassen, of East St. Louis, for appellant.

William B. Starnes, State's Attorney of Randolph County, of Chester, for appellee.

EBERSPACHER, P. J.

This is an appeal brought by the defendant, Rodger Braun, following his conviction for the offenses of reckless homicide, driving while under the influence of intoxicating liquor and driving without a valid operator's permit.

The defendant was tried before a jury in Randolph County, Illinois, which returned a verdict finding the defendant guilty of each of the three offenses. Judgment was entered on the verdict, and the court sentenced the defendant on each of the offenses with a further order that the sentences were to be consecutive. In his effort to reverse the judgment, the defendant alleges that the court erred in the admission of certain statements made by the defendant, and impropriety of the consecutive sentences.

From the record it appears that an automobile collision occurred on May 13, 1967, which resulted in the death of one individual, and the hospitalization of the defendant. Three days later, on May 16, 1967, four Illinois State Troopers visited the defendant in the hospital. The troopers entered the room and talked with the defendant in pairs. During the troopers' "interview" with the defendant, the defendant made statements, some inculpatory and some exculpatory, which were introduced into evidence at the trial over the objection of the defendant.

One of the troopers in the first pair advised defendant that he had a right to remain silent, that anything he

might say might be used against him in open court, and "he had a right for an attorney if he so desires." The conversation took place before presenting defendant with a citation for violation of the Uniform Act Regulating Traffic on Highways,[1] but after defendant had been told that the troopers had a ticket for him. One of the troopers of the second pair advised defendant that he did not have to make a statement, that it could be used against him, and that he had "the right to an attorney."

There is no question that the investigation had focused on defendant,[2] and the defendant alleges, and the State candidly admits, that the statements of the defendant were the culmination of custodial interrogation within the meaning of Miranda v. State of Arizona, 384 US 436, 16 L Ed2d 694, 86 S Ct 1602. The United States Supreme Court in Miranda stated that:

> "By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. State of Arizona, 384 US 436, at 444.

The fact that the defendant was interrogated in the hospital rather than the police station is of little relevance when it is clear that the defendant's injuries require his hospitalization.

The defendant was not specifically informed that prior to any questioning he had the right to the presence of an attorney, and that if he could not afford an attorney, one would be appointed for him prior to any questioning, in accordance with Miranda, 384 US 436, at 479.

In answer to the defendant's argument, the State argues that there has been substantial compliance in the giving of the Miranda warning by the troopers, and that

[1] Chapter 95½, § 98 et seq., Ill Rev Stats 1965.
[2] Escobedo v. Illinois, 378 US 478, at 492.

there was no indication that the defendant was indigent at the time of the interrogation. The State cites as authority a recent case of the Massachusetts Supreme Court, Commonwealth v. Wilbur, 231 NE2d 919, in which the warning complied with the requirements of Miranda in every detail, except the arresting officer's failure to inform the suspect that he had the right to appointed counsel if unable to retain his own. There the Massachusetts Court held that "it is the spirit more than the form that counts" as far as Miranda warnings apply.

In Miranda we find unequivocal language:

> ". . . an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation. . . . " Miranda, 384 US 436 at 471, 16 L Ed2d 694, 86 S Ct 1602, at 1626.

and at 384 US 436, at 473, 16 L Ed2d 694, 86 S Ct 1602, at 1627:

> "In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. *Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one.* The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be

assurance that he was truly in a position to exercise it." (Emphasis added.)

In the Massachusetts case the defendant was a natural resource officer who could exercise all of the authority of police officers except for the service of civil process; from this the Court concluded that the defendant could not be regarded as being ignorant of his constitutional rights. The officers who arrested Wilbur knew him, knew he owned property and was a public officer, and the Court could rely on Miranda footnote #43 which states that it is not necessary to warn the suspect who is known to have an attorney or is known to have ample funds to secure one. There too, the Court pointed out that the police officers, in a matter that arose before Miranda, acted in good faith and could not anticipate such decision, and noted the limitations of its decision. (See footnote 8, Commonwealth v. Wilbur, supra.)

The State here has suggested that there is no indication that Braun was indigent at the time of making the statements and advised the officers at that time that he had altered his driver's license so that he could cash payroll checks and advised the court that he could not hire an attorney "now" indicating he was laid off because of an arm injury and obviously because he was in jail. In the Miranda footnote 43, the Supreme Court pointed out "the expedient of giving a warning is too simple and the rights involved too important to engage in ex post facto inquiries into financial ability when there is any doubt at all on that score."

■ ■ By the same token it is not the duty of the accused to demonstrate his indigency before his is entitled to be told of his right to appointed counsel. Perhaps if there is an affirmative showing that the accused is not indigent, the failure to give the warning would not be fatal. United States v. Messina, 388 F2d 393 (2nd Cir 1968). However, there was no such showing in the pres-

9

ent case. The reasoning of the Wilbur case, on the facts here present, is not persuasive.

■ The fact there may have been sufficient evidence independent of the incriminatory statements of defendant to convict him does not remedy the violation of his constitutional rights and is not a basis upon which to affirm his conviction, because we cannot determine what evidence convinced the jury of defendant's guilt beyond a reasonable doubt. In Miranda, the Court pointed out:

> "No distinction can be drawn between statements which are direct confessions and statements which amount to admissions of part or all of an offense.
>
> ". . . No distinction may be drawn between inculpatory statements and statements alleged to be merely exculpatory . . . . Statements merely intended to be exculpatory by the defendant are often used to . . . demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication." Miranda, 384 US 436 at 476–477, 86 S Ct 1602, at 1629.

Concluding that there was not sufficient compliance with Miranda, we find it unnecessary to pass upon the second assignment of error by defendant.

We have particularly noted the high quality of the briefs of both appellant and appellee and express our particular appreciation of the work of appointed counsel in this cause. The cause is reversed and remanded to the Circuit Court of Randolph County for a new trial.

Reversed and remanded.

GOLDENHERSH and MORAN, JJ., concur.