259 A.2d 855.

State *vs.* Stanley Robert Gendreau.

DECEMBER 8, 1969.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Indictment for murder, before Supreme Court on bill of exceptions filed by defendant following jury verdict of guilty of murder in the second degree and denial of motion for a new trial and sentence by Weisberger, J., of Superior Court, heard and exceptions to rulings admitting into evidence statements of defendant while in police custody sustained and case remitted to Superior Court for a new trial. Motion for reargument denied.

Kelleher, J. This is an indictment which charges the defendant with the April 21, 1965 murder in Little Compton

of 18-year-old Anne C. Brownell. The defendant was taken into custody by the state police and interrogated on April 23, 1965. On the next day he was brought before the First District Court in Newport to answer a charge of murder. The district court judge appointed counsel to represent the defendant and a not guilty plea was entered at this time. The Newport County grand jury was then reconvened by the presiding justice of the Superior Court at the specific request of the then attorney general. The grand jury returned the instant indictment on April 30, 1965. Trial began on October 3, 1966 and concluded on November 25, 1966 when the jury returned a verdict finding the defendant guilty of murder in the second degree. Thereafter, the trial justice denied the defendant's motion for a new trial and sentenced him to life imprisonment. The defendant is before us on his bill of exceptions. He has briefed and argued but two points. One is to the admission into evidence of certain statements he gave the police during his 1965 in-custody interrogation. The gist of the second point is that there is in this record competent evidence which would warrant this court to reject the M'Naghten rule as a guide for determining criminal responsibility and in its place adopt the Durham rule or a modification thereof.

We need only discuss defendant's first contention because, although defendant's interrogation took place prior to the mandates enumerated in *Miranda* v. *Arizona,* 384 U. S. 438, 86 S. Ct. 1602, 16 L. Ed.2d 694, his trial did not begin until October 1966. We have set forth the chronological highlights of the travel of this case inasmuch as the United States Supreme Court in *Johnson* v. *New Jersey,* 384 U. S. 719, 733, 86 S. Ct. 1772, 16 L. Ed.2d 882, ruled that any defendant whose trial commenced after June 13, 1966 would be afforded the protection of the rules promulgated in *Miranda.* In *State* v. *Gannites,* 101 R. I. 216, 221 A.2d 620, we pointed out that any exculpatory or inculpa-

tory statement elicited by the police during an in-custody interrogation could not be used at trial unless *prior to questioning* an accused has been given the four Miranda warnings. They are: (1) the accused must be told that he has a right to remain silent; (2) he must be informed that if he does say anything to the officers, such may be used as evidence against him in a court of law; (3) he must be informed that he has a right to consult a lawyer and that he may have the lawyer present with him during the interrogation; and (4) finally, the police must inform him that if he cannot afford a lawyer, one will be appointed for him free of charge.

The admissibility of certain oral and written incriminating statements made by defendant to the police was determined by the trial justice in a preliminary hearing held in the absence of the jury. The police testified that prior to questioning defendant, they informed him that he was a suspect in the Brownell murder; that they wanted to question him; that he had a right to remain silent; that he was not required to make any statement of any kind; that any statement he made could be used against him in a court of law; and that he had a right to have an attorney. The police also declared that they asked defendant if he understood what they had told him, and that when replying in the affirmative, defendant said he did not wish counsel.

The defendant at the time of his interrogation was 22 years old. On December 31, 1964, he had received a medical discharge from the United States Navy because in the opinion of the Navy's psychiatrists he was suffering "from a personality disorder of a schizoid type" which rendered him unsuitable for further military service. At the preliminary hearing defendant's testimony was in direct conflict with that offered by the state. He told the court that he was never advised of any constitutional rights, that he was threatened by the police and that the barracks interro-

gation took place after he was forced to strip to his underwear. This last action, he claimed, amounted to a type of psychological coercion which was disapproved in *Miranda*.

In holding that the statements were admissible, the trial justice recognized the applicability of *Miranda* to the case at bar and found that the police gave defendant the first three warnings. It is conceded that no one informed defendant of his right to free counsel. The trial justice recognized this deficiency but went on to say:

"* * * while in every respect the guide lines of *Miranda* should be complied with strictness once they are known, that in determining a case which occurred prior, that is the interrogation, prior to *Miranda,* it becomes the duty of the Court to determine whether *substantial* compliance with the principles enunciated was had." (emphasis ours)

The trial court, just prior to his invoking the substantial-compliance doctrine, observed that at the time of his arrest, defendant was known to the police to be employed as a carpenter and therefore the court found that the question of defendant's so-called indigency never arose. In making this finding, the court observed: "* * * the ability to engage an attorney to represent one in a charge of murder and the ability to obtain an attorney who might come to a police station for an hour or two while the individual is being interrogated, are two entirely different things." We believe that the distinction delineated by the trial justice is truly a distinction without a difference. Miranda does not define who is an indigent; neither does it provide a measuring stick for determining when a person's funds are sufficiently "ample"[1] to excuse the need of advising him of

---

[1]The word "ample" is found in the much quoted footnote in *Miranda,* 384 U. S. 436, 473, n. 43, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694, which reads as follows: "While a warning that the indigent may have counsel appointed need not be given to the person who is known to have an attorney or is known to have *ample funds* to secure one, the expedient of giving a warning is too simple and the rights involved too important to engage in

his right to be supplied with an attorney. The lack of a measuring stick, however, is not significant. *Miranda* is not a narrow decision. It gives depth and meaning to the Fifth Amendment of the federal constitution which states: "No person * * * shall be compelled, in any criminal case, to be a witness against himself." In order to insure against any curtailment of the privilege against self incrimination, *Miranda* prescribes certain rights as the entitlement of a person in custody who is about to undergo interrogation. It specifies how, when, and in what manner that person is required to be apprised of those rights. Indeed, a decision of this far-reaching thrust does not contemplate a narrow and technical definition of "indigency;" neither does it intend that a person facing a possible murder charge need not be advised of his right to appointed counsel solely because he had the financial ability to pay for an hour or two of legal services. The sweep of *Miranda* goes far beyond that. It rejects a principle which requires an assessment of the accused's finances at each initial stage of a criminal prosecution; and it does not tolerate a concept which makes the right to be supplied with counsel at successive stages of a prosecution turn upon whether or not the accused has exhausted his funds and is without the wherewithal to pay counsel to represent him for whatever remains of the case. A rule so narrowly conceived fragments the right to counsel and strikes at the Sixth Amendment right of an indigent accused in a criminal prosecution "to have the assistance of counsel for his defense."

The differences of opinion[2] which have been expressed by the various courts which have been confronted with the problem involved in the admissibility of a pre-*Miranda* confession in a post-*Miranda* trial stem from the fact that in

---

*ex post facto* inquiries into financial ability when there is any doubt at all on that score."

[2]See Appendix.

*Johnson* the Supreme Court selected the date of trial rather than the date of interrogation as the effective date when the principles in *Miranda* would be applied. Many thought this choice was pure happenstance. However, on June 2, 1969, in *Jenkins* v. *Delaware,* 395 U. S. 213, 89 S. Ct. 1677, 23 L. Ed.2d 253, former Chief Justice Warren put this notion to rest. In *Jenkins,* the court, in deciding that the *Miranda* standards for determining the admissibility of in-custody statement would not be applied in a post-*Miranda* retrial of a case which had been originally tried prior to that decision, went on to discuss the difficulties involved in making a choice between a prospective or retrospective application of a new constitutional doctrine. Some defendants, it pointed out, would benefit from a new rule while others would not, simply because of the fortuitous circumstances which determine the progress of their cases from initial investigation and arrest to final judgment. In applying criteria for resolving the question of the effective date for a new constitutional rule affecting a criminal trial, the court said that in the recent cases of *Desist* v. *United States,* 394 U. S. 244, 89 S. Ct. 1030, 22 L. Ed.2d 248, and *Stovall* v. *Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed.2d 1199, it had considered the extent of reliance by law enforcement authorities on old standards and the effect a retroactive application of the new standards would have on the administration of justice. The court, both in *Desist* and *Stovall,* made certain new constitutional rules prospective in their operation. The court talked of the day of the event rather than the date of trial. Accordingly, in *Desist* it was held that evidence obtained by the use of nontrespassory electronic surveillance devices would be barred only if the surveillance was conducted after December 18, 1967—the date that *Katz* v. *United States,* 389 U. S. 347, 88 S. Ct. 507, 19 L. Fd.2d 576 was decided. *Katz* held that the use of such electronic eavesdropping evidence to be unconsti-

tutional. *Stovall* held that an accused had the right to the presence of counsel while the accused was being placed and viewed in a lineup. The rule in *Stovall,* the court said, would be applied only to lineups taking place after the publication of the decision.

The court then went on to say that in *Johnson* it could have adopted the *Desist* and *Stovall* approach and made the rules in *Miranda* applicable only to in-custody interrogations which occurred after June 13, 1966, the date of the *Miranda* decision. However, the court declared:

> "But in an effort to extend the protection of *Miranda* to as many defendants as was consistent with society's legitimate concern that convictions already validly obtained not be needlessly aborted, we selected the commencement of the trial. Implicit in this choice was the assumption that, with few exceptions, the commission and investigation of a crime would be sufficiently proximate to the commencement of the defendant's trial that no undue burden would be imposed upon prosecuting authorities by requiring them to find evidentiary substitutes for statements obtained in violation of the constitutional protections afforded by *Miranda.*"

This case apparently represents one of the exceptions referred to in *Jenkins,* and Gendreau is one of those fortuitous beneficiaries alluded to by the former Chief Justice. Almost a year and a half elapsed between the return of the indictment and the commencement of trial. There was an interval of over a year between the indictment's return and the *Miranda* decision. There were several factors which contributed to the delay of trial. The defendant filed a motion to quash the indictment and a motion for a change of venue. Hearings were held on each motion. The defendant's original court-appointed counsel was hospitalized in January 1966 when the state was pressing for trial. This attorney was permitted to withdraw in March 1966 and the public defender then entered the case. There was a question as to defendant's competency to stand trial which was

not resolved until late spring 1966. On June 3, 1966, when the Superior Court denied defendant's motion for a change in venue, both sides evidenced an interest in having the case tried during that term. The court, however, inquired as to the estimated length of trial and, after checking the ready status of other cases then pending, expressed serious reservations as to whether the case could be reached, tried and concluded before the expiration date of the spring term ——June 17, 1966. Having this doubt, the justice in charge of the Superior Court's Newport session declined to set the case down for trial.

It is clear, however, that when the prosecution began its presentation of evidence in October 1966,[3] it was well aware of the requirements of *Miranda*. As soon as the state began to adduce the disputed evidence, the defense made its objection thereto on the basis that the fourth warning had not been given. At oral argument before us, the assistant attorney general (he was not trial counsel) admitted that the warnings as given to Gendreau, if given today, would not satisfy the rule of *Miranda*. When the state began to delve into the interrogation which took place on April 23, 1965, it knew or should have known that it had to overcome the hurdle which is found in the following portion of *Miranda*:

> "After such warnings have been given, [the four warnings described herein] and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. *But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.*" 384 U. S. at 479, 86 S. Ct. at 1630, 16 L.Ed.2d at 726. (Italics ours.)

---

[3]The trial of this case was originally scheduled to be held in Newport. In September 1966, defendant filed another motion for a change in venue. The motion was granted and the trial was held in Providence rather than Newport.

Notwithstanding the admonition in *Miranda* about an *ex post facto* inquiry into an accused's financial ability, it is quite clear that if a statement obtained in a pre-*Miranda* interrogation is sought to be used in a post-*Miranda* trial, there must of necessity be such an inquiry. Accordingly, if the state wished to avail itself of the statements made by Gendreau to the police while he was being questioned at the barracks, it had the burden of showing that the recitation of the fourth warning was completely unnecessary because defendant had "ample funds" to hire, if he was so inclined, an attorney who would not only represent him during the interrogation but would also provide him with all the professional services which might thereafter arise including those services incidental to a murder trial. See *Commonwealth* v. *Yount*, 405 Pa. 276, 256 A.2d 464. Once the state began to present evidence as to the confessions or admissions made by Gendreau during his in-custody interrogation, it assumed this burden in what had to be an *ex post facto* inquiry of Gendreau's indigency.

The record, however, shows that the state never addressed itself to the burden. The mere references in the record to the fact that the defendant was working as a carpenter at the time of his questioning does not satisfy the burden. In the circumstances of this case, the state in order to relieve itself of the necessity of communicating to the defendant the fourth *Miranda* warning, had to go forward with competent evidence to establish the fact, as we have pointed out herein, that Gendreau had sufficient economic wherewithal to retain private counsel. The failure to establish that Gendreau was a man of "ample funds" is the fatal defect in the prosecution's case. The use of the incriminatory statements, therefore, in the Superior Court trial was erroneous and prejudicial.

The defendant's exceptions to the rulings admitting into evidence statements he made while in police custody are

sustained. The case is remitted to the Superior Court for a new trial.

Motion for reargument denied.

## APPENDIX

The following cases have upheld the use of incriminating evidence elicited from an accused who has not been given the fourth or so-called indigency warning:

> *United States* v. *Messina*, 388 F.2d 393 (2d Cir. 1968)
> *United States* v. *Fisher*, 387 F.2d 165 (2d Cir. 1968)
> *State* v. *Gray*, 268 N. C. 69, 150 S. E.2d 1
> *O'Neal* v. *State*, 115 Ga. App. 100, 153 S. E.2d 663
> *State* v. *Bliss*, Del., 238 A.2d 848
> *Commonwealth* v. *Wilbur*, 353 Mass. 376, 231 N. E.2d 919
> *People* v. *Post*, 23 N. Y. 2d 157, 242 N. E. 2d 830
> *Guyette* v. *State*, Nev., 438 P.2d 244
> *Hayes* v. *State*, 39 Wis.2d 125, 158 N. W. 2d 545

In each of the first seven cases cited above, the appellate court remarked that the record showed that private counsel had represented the defendant either at the arraignment or trial. Delaware also refused to apply *Miranda* to a case involving an infraction of the state's motor vehicle code. The Massachusetts court further pointed out that the defendant was a law enforcement officer who could not be regarded as ignorant of the rights of a person under arrest. In New York, *Post* never made any specific objection at the preliminary hearing as to the admissibility of his confession. The absence of the fourth warning was raised for the first time at the appellate level. Nevada ruled the omission was erroneous but harmless because defendant never suggested that his confession was coerced. In the Wisconsin case, the omission was classified as error harmless because there was ample independent evidence which clearly demonstrated the defendant's guilt.

The following cases have held that the failure to give the fourth warning was error which necessitated a new trial:

United States v. *Lackey*, 413 F.2d 655 (7th Cir. 1969)
*Fendley* v. *United States*, 384 F.2d 923 (5th Cir. 1967)
United States v. *Miller*, 261 F. Supp. 442 (D.Del. 1966)
*People* v. *Braun*, 98 Ill. App.2d 5, 241 N. E.2d 25
*Thomas* v. *State*, 3 Md.App. 101, 238 A.2d 558
*Dailey* v. *Commonwealth*, 208 Va. 452, 158 S. E.2d 731*
*Commonwealth* v. *Dixon*, 432 Pa. 423, 248 A.2d 231.

*Herbert F. DeSimone*, Attorney General, *Donald P. Ryan*, Assistant Attorney General, *Luc R. LaBrosse*, Special Assistant Attorney General, for plaintiff.

*James Cardono*, Public Defender, *William F. Reilly*, Assistant Public Defender, *Moses Kando*, Assistant Public Defender, for defendant.

---

*In *Burnley* v. *Commonwealth*, 208 Va. 356, 158 S. E.2d 108, the Virginia Supreme Court of Appeals in refusing to apply *Miranda* cited *Gilligan's Case*, 99 Va. 816. 37 S. E. 962 which states that a criminal trial begins with an arraignment of the prisoner and ends with the pronouncement of sentence. Burnley was arraigned in May 1966. The Virginia court, relying on *Gilligan*, held that Burnley's trial began when he was arraigned and, hence. *Miranda* was inapplicable. In our opinion, especially after studving the *Jenkins* case, when the Supreme Court used the word "trial" in *Johnson*, it was not employing the word in the same legalistic and technical fashion as the Virginia court.