2 Ill. App.3d 471 (1971)
276 N.E.2d 768
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
ARTHUR S. REEDER, Defendant-Appellant.
No. 71-12.
Illinois Appellate Court  Second District.
December 15, 1971.
*472 Marco & Mannina, of Downers Grove, for appellant.
William V. Hopf, State's Attorney, of Wheaton, (Ralph J. Gust, Jr., Assistant State's Attorney, of counsel,) for the People.
Judgment affirmed.
Mr. JUSTICE GUILD delivered the opinion of the court:
The defendant was charged in a two count indictment with reckless homicide and involuntary manslaughter. He was tried by a jury and found guilty of both counts of the indictment. He was sentenced to three years probation with the first 120 days to be served in the county jail.
The defendant, Arthur S. Reeder, is a truck driver. On the 24th of December, 1968, he attended a party at his place of business in North Lake, Illinois. He left the party about 3:45 in the afternoon and at 4:50 P.M. while driving on Ogden Avenue he crossed the center line of a four lane highway and struck a car driven by one Frank Rossi, whose wife was a passenger in that vehicle. Rossi was killed and his wife injured. The defendant was removed from the scene of the accident. At first the defendant said he was not injured but at the police officer's insistence he was taken to the Hinsdale hospital. At approximately 8:30 in the evening Officer Kenneth Wilbur who had gone to the hospital, talked to the defendant who had received medical treatment and Officer Wilbur then queried him for the purpose of filling out an accident report. Officer Wilbur did not give the Miranda warnings to the defendant. At this point while questioning the defendant Officer Wilbur asked him if he would take a blood alcohol test. The defendant volunteered the statement "this will kill me, I have alcohol in my blood, I want to see my wife before I sign anything." This statement was made after the defendant was asked to sign a consent slip for the test.
The defendant was driving west on Ogden Avenue which is a four lane highway. Two witnesses testified that prior to the accident they *473 followed the defendant's car after he had swerved in front of them. Their testimony substantially was that he swerved back and forth in the westbound lanes, at one time going off the road and then later over the center line between the east and westbound lanes. Another witness driving east testified that the defendant crossed the center line forcing him to drive off the road onto the shoulder of the eastbound lanes. He then saw the collision of the defendant's car with that of the deceased in his rear view mirror. This witness testified further that when he went back to the scene of the accident he noticed that the defendant had been drinking, but the witness refused to answer the question as to whether in his opinion the defendant was intoxicated. Another witness testified that he saw defendant's car cross the center line of the four lane highway and strike deceased's car head on. Still another witness who came upon the scene testified that he noticed that the defendant had been drinking. Defendant himself took the stand and admitted that he had had either three or four drinks of scotch and ginger ale. One of defendant's witnesses likewise testified that he gave the defendant three drinks of scotch.
The defendant and his wife both testified that he was ill on the day in question. One of defendant's witnesses testified that the defendant's "face was flushed and he looked sick" at the Christmas party. The other three witnesses for the defendant who were at the Christmas party did not notice that defendant appeared to be ill, nor did he make a complaint of being ill to any of the people present at the party.
After the defendant was in the hospital he was treated by Dr. Gerald Marsa. Dr. Marsa testified that "my opinion as to his neurological status was that he was intoxicated."
A motion to suppress the statement made by the defendant to the police officer at the hospital at 8:30 in the evening was heard by the court on September 18, 1969. The court denied the motion. At the trial both Officer Wilbur who was making the investigation of the accident, and Officer Caldwell who stayed at the scene of the accident testified that in their opinion the defendant was intoxicated. At the trial this statement was admitted into evidence.
It is to be specifically noted that the defendant was never charged with driving while intoxicated.
The first contention of the defendant is that the statement made by the defendant at the hospital approximately three and one-half hours after the accident to Officer Wilbur was inadmissible under Miranda v. Arizona (1966), 384 U.S. 436, 86 Supreme Ct. 1602.
Succinctly stated, the question before this court is whether or not a statement made by a defendant pertaining to his drinking is admissible *474 where made to a police officer making an investigation of an accident, not at the scene of the accident, but in the hospital where he was questioning one of the parties to the accident.
Counsel have cited and rely upon People v. Braun (1968), 98 Ill. App.2d 5, 241 N.E.2d 25. This case may readily be distinguished from the instant case. In Braun, four Illinois State troopers went to the hospital where the defendant was, three days after the accident and told the defendant they had "a ticket" for his arrest. They then queried him in teams of two and the defendant made statements which were used against him at the trial. The prosecution admitted that the statements of the defendant were the culmination of custodial interrogation within the meaning of Miranda, supra. The court there held that Miranda did apply and reversed, even though there might have been sufficient evidence to convict independent of incriminatory statements of the defendant. These facts are quite in contrast to the situation in the instant case. Here we have a police officer investigating an accident. During the course of that investigation he noted that the defendant had been drinking. He then asked the defendant if he would take a blood test, and in refusing to do so, the defendant stated that the blood test would "kill" him as he had alcohol in his blood. The defendant was not in custody, he had not been charged with any offense and as a matter of fact was not charged until some time later.
 1-4 Custodial interrogation as contemplated by Miranda is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." That is not the case in the factual situation here nor do we believe that this apparently routine accident investigation had "focused" upon the defendant. (People v. Milligan (1969), 107 Ill. App.2d 58 245 N.E.2d 551.) Further in this regard we agree with the court in People v. Routt (1968), 100 Ill. App.2d 388, 241 N.E.2d 206 at page 208 the court stated
"As to the assertion of the application of the decision in Miranda, we do not see that that case is here relevant. Miranda does not apply to the initial interrogation at which the officer asked general questions, because by its language the United States Supreme Court specifically determined that general on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding."
We feel that in the instant case the police officer who had no knowledge that the defendant might or might not have been intoxicated took the injured party to the hospital and then subsequently at the hospital queried him as to the facts of the accident. We believe that this constituted "general *475 on the scene questioning" within the meaning of Miranda.
 5 The second contention of the defendant is that one of the two police officers who remained at the scene of the accident testified at the motion to suppress that he noted "a moderate odor of alcohol on the defendant." At the trial the same officer testified in his opinion that the defendant was intoxicated. It is to be noted that this officer was not queried on the motion to suppress as to whether or not the defendant was or was not in fact intoxicated. In addition to this if there were any impeachment of this officer it was presented to the court by defense counsel. This court does not feel that the defendant was prejudiced in any way by this officer's testimony, particularly in view of the considerable other evidence presented as to defendant's intoxication.
 6, 7 The defendant next contends that the evidence was insufficient to prove the defendant's guilt beyond a reasonable doubt. This contention is without merit. The principal thrust of the defendant's argument in this regard is that the various witnesses were allowed to testify as to their opinion as to defendant's intoxication. As pointed out above, the defendant was not charged with driving while intoxicated. The general rule is that the average person is familiar with intoxication and may express his opinion as to whether or not a party is intoxicated based upon his observance of the defendant. It is not deemed necessary to cite authority for this. In addition to this, a medical doctor, the treating physician, testified specifically that from a neurological standpoint defendant was intoxicated when he examined him after the accident. But more important than the question of intoxication is defendant's actions in driving his vehicle prior to the accident. Defendant's defense apparently is that he was ill to the point of where he could not drive properly. If that were the case, and from the evidence presented we are not convinced in any way that the same is true, the defendant should not have been driving a vehicle where his faculties were so impaired by his purported illness that he was unable to drive a motor vehicle in a proper manner. In this court's opinion the evidence is more than sufficient to prove the defendant's guilt beyond a reasonable doubt.
Judgment affirmed.
MORAN, P.J., and ABRAHAMSON, J., concur.